IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In the Matter of:** | : | **CIVIL ACTION** |
| **FRANK G. SCHAFFER** | : | |
| | : | **No. 19-1848** |
| | : | |

## MEMORANDUM

Every case has a life of its own and every case must be viewed from the point of view of its specific facts before assessment can be made as to where it fits into the spectrum of protections and remedies provided by the law. Most cases fall somewhere within this spectrum requiring a complete development of a record and a painstaking analysis of the record and application of the law. There are a few cases, and this is one, that fall outside the spectrum of protections and remedies because a litigant, here the Debtor, uses those protections not as a protection but as a weapon to avoid, to mask, to delay, to deflect, and to disassemble.

The Honorable Ashely M. Chan of the United States Bankruptcy Court found, among other things, that the Debtor failed to fully disclose his assets and liabilities in both of his two bankruptcy filings, flagrantly disregarded the Chapter 13 trustee's warning not to spend funds which constituted property of the bankruptcy estate unless the Debtor could repay such funds to his creditors, filed pleadings containing multiple inconsistencies, and lacked the ability to obtain confirmation of a bankruptcy reorganization plan. ECF No. 12-17 at p. 20.

1

Accordingly, and as a result of the Debtor's bad faith, the Bankruptcy Court granted relief from the automatic stay to allow: Rashiddudin Mohammadi ("Rashid") to pursue his state law rights against certain proceeds that the Debtor is entitled to receive as an inheritance; Kichkin General Trading, LLC ("Kichkin") to pursue its state law rights to recover certain gems that it owns that are in the possession of the Debtor; and Kichkin and Rashid (collectively, the "Creditors") to resume state court litigation against the Debtor. *Id.* The order made clear that the automatic stay would otherwise remain in full force and effect as to remaining estate property and that the Creditors were prohibited from executing on any other property of the estate without receiving further leave from the court. *Id.* at p. 47.

The Debtor argues on appeal to this Court that the Bankruptcy Court did not have a just basis for granting relief from the automatic stay. ECF No. 11 at p. 12. The Court wholly disagrees.

## I. Standard of Review

The Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1). Where a district court reviews a decision of the bankruptcy court on questions of fact, the court applies a clearly erroneous standard of review. *Woodard v. City of Philadelphia*, 558 B.R. 711, 716–17 (E.D. Pa. 2016) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)). Under this clearly erroneous standard of review, the bankruptcy court's findings of fact must

stand unless "the court is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Brager v. Blum*, 49 B.R. 626, 629 (E.D. Pa. 1985)).

However, "the 'clearly erroneous standard' does not apply to questions of law. Thus, where the appellate question presented is solely one of law, no presumption of correctness applies. The bankruptcy judge's legal conclusions may not be approved without [the district court's] independent determination of the legal questions." *Id.* (quoting *In re Gilchrist Co.*, 410 F. Supp. 1070, 1074 (E.D. Pa. 1976) (citations omitted)); *see also Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–03 (3d Cir. 1981). Therefore, a bankruptcy court's conclusions of law are subject to plenary review. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Kimmelman v. Port Authority*, 344 F.3d 311, 316 (3d Cir. 2003). Here, Debtor's appeal is primarily based on the Bankruptcy Court's conclusions of law and, therefore, his arguments are subject to plenary review.[1]

---

[1] The Creditors contend that the Debtor did not appeal the Bankruptcy Court's March 28, 2019 Orders granting the Creditors relief from the automatic stay and denying the Debtor's request for an extension of the stay. ECF No. 13 at p. 6. The Creditors contend that the Debtor has instead appealed the orders denying reconsideration and granting the Creditor's supplemental motion for stay relief. *Id.* Thus, the Creditors argue that the Court should review the Bankruptcy Court's denial of the motion for reconsideration for abuse of discretion. The Court finds this distinction of no import because under any standard of review, the Court would affirm the Bankruptcy Court's granting partial relief from the automatic stay.

3

## II. Background

<u>State Court Litigation Between the Debtor and Creditors</u>

On December 26, 2013, the Debtor entered into a partnership agreement with Kichkin, through its representative Rashid, under which the Debtor agreed to clean, cut, polish, develop, and sell gems supplied by Kichkin. A619-24. The parties agreed to split any net profits from sale of the gems. *Id.* The agreement stated that the Debtor did not obtain ownership of the gems and they were to be returned to Kichkin upon his request. A619-22. On February 2, 2015, Rashid and the Debtor entered in to a declaration of commitment under which the Debtor promised to sell the gems for the parties' mutual benefit and pay the total amount of money to Rashid personally. A642 (stating that the total cost of both gems was $561,176.60). Despite that agreement, the Creditors never received any money from the Debtor. A673.[2] On July 25, 2016, the Creditors filed a lawsuit against the Debtor in the Philadelphia County Court of Common Pleas alleging breach of contract, fraud, promissory estoppel, and unjust enrichment. A29-30. On February 21, 2018, after the Debtor failed to respond to the Creditors' motion for partial summary judgment, the state court entered a liability judgment on Kichkin's breach of contract claim, directed that an assessment of damages hearing take place within 30 days of the order, and granted partial summary judgment in favor of Rashid on his breach of

---

[2] The Debtor contends that he was only able to sell one of the gems for $7,000.

4

contract claim for both liability and damages in the amount of $561,176.60 exclusive of interest and costs. A353, A487-97. The Debtor did not file an appeal of the judgments. A673. On March 5, 2018, Rashid filed an application for costs on the judgment. A30, ¶ 4.

The Debtor's Late Mother's Estate

While the state court action was proceeding, the Debtor's mother passed away. A234-39. At the time of his mother's passing, the Debtor was appointed as executor of the mother's estate. *Id.* On October 4, 2017, the estate, in an interesting and unique maneuver, paid the Debtor, through his attorney, $50,000 to induce the Debtor to relinquish his position as the executor of the estate. A238-39; A547-48. The Debtor's attorney was paid $10,000 for his services and the remaining $40,000 was paid to the Debtor. *Id.* On the face of it, this fee seems to be exorbitant but for our immediate purposes here it is irrelevant other than the fee seems significant enough to highlight given that we have two creditors who have received nothing.

The Debtor's Chapter 13 Bankruptcy Petition

On March 23, 2018, approximately one month after the state court judgments were entered, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. A626. Subsequently, on April 5, 2018, the Debtor filed his schedules, statement of financial affairs, and Chapter 13 plan, which were full of

5

discrepancies. A674. Notably, the Debtor did not disclose his interest in his mother's estate or that he had received money from his mother's estate. *Id.* The Debtor also identified the Creditors as secured creditors holding a single joint claim related to the state court judgment, which the Debtor portrayed as only secured to the Debtor's estimated value of the gems, which he asserted was only $5,000, despite previously having agreed that the gems cost significantly more than that amount. *Id.*[3]

Furthermore, the Debtor also stated in his statement of financial affairs that his gross income from January 1, 2018, to March 23, 2018, was $7,500 and that his gross income during each of the past two years was $30,000 per year. *Id.* However, the Debtor's March 2018 and April 2018 operating reports reflected total gross income of $21,388.50 for those two months alone. *Id.* Despite this sum, the Debtor's operating statements showed losses of $10,357.30 and $14,360.49 respectively, which also conflicted with the Debtor's alleged net income. A116-17; A675.

On May 24, 2018, the Section 641 meeting of creditors was held. A629. At that meeting, when asked by the trustee if he had any interest in property due to him

---

[3] In addition, the only other creditors identified in the schedules were the Debtor's landlord, with an unsecured, unliquidated claim of $30,000 and Dr. Rick Hellman, with an unsecured, unliquidated claim in the amount of $100,000. *Id.* Indeed, the Debtor does not dispute that he has only four creditors. ECF No. 11 at p. 26.

from someone who had died, the Debtor disclosed his interest in his mother's estate for the first time, but represented that he did not know whether he would receive any distribution or whether the mother's estate had any funds despite the fact that by this time, the Debtor had already received $50,000 in exchange for relinquishing his executorship. A235-36; A547-548.

The following day, the Debtor received a $100,000 distribution from the estate. A243; A360. Shortly after receipt, the Debtor's counsel emailed the Chapter 13 trustee to advise that the Debtor had received a substantial payment from the estate. A360; A637-38. In response, the Chapter 13 trustee sent a letter to the Debtor's counsel stating that "it is clear under 11 U.S.C. Section 541(a)(5), that any interest in property received by 'bequest, devise, or inheritance' within 180 days of filing is bankruptcy estate property." A637. The trustee's letter further noted that:

> [s]ince the funds are bankruptcy estate property, any confirmable plan will need to comply with 11 U.S.C. Section 1325(a)(4). In other words, if the money is spent, it will still have to be accounted for in the plan, and that may well be impossible, depending upon the allowed claims and debtor's other resources. It may also call into question debtor's good faith.

*Id.* The Court must commend the restraint and the irony in stating that it "may also call into question debtor's good faith."

Subsequently, the Debtor filed his May 2018 operating report, which included the distribution, and which also represented that the Debtor had gross

7

business income that month of $11,975. A115. After paying business expenses of $16,621.02, his personal expenses, and the Chapter 13 plan payment, the Debtor reported a total gain of $94,422.01 in May 2018. *Id.* Without the distribution, the Debtor would have suffered a loss of $5,577.99 in May 2018. A113-17.

The operating report for the following month represented that the Debtor generated $10,584.99 in gross income, while paying out business expenses of $44,463.20, resulting in a loss of $35,103.21 after personal expenses, Chapter 13 plan payment, and without considering the balance attributable to the distribution. A114. Similarly, the Debtor's July 2018 operating report claimed a gross business income of $4,265.69 and a $16,000 loan from one of the Debtor's customers, while representing that the Debtor incurred $53,877.35 in business expenses, resulting in a loss of $50,811.66 after personal expenses, payment of the Chapter 13 plan payment, and without considering the balance attributable to the distribution or the customer loan. A677.

On August 7, 2018, at a hearing on the Chapter 13 trustee's motion to dismiss, the Debtor revealed for the first time that he had spent the entire $100,000 distribution from his mother's estate in less than three months. A33 at ¶ 39; A243, 245; A361, 392. The Debtor later testified that he had spent the distribution to catch up on approximately $18,000 of post-petition rent; attend a trade show in Hong Kong to show gems (restraint and irony would turn to laughter here but for

we have two creditors being held hostage while the Debtor travels the world), which cost the Debtor between $22,000 and $25,000; pay post-petition amounts totaling $7,000 owed to employees; pay post-petition bills incurred in casting and model-making; and pay post-petition operating expenses for his business. A244-47; A361-62.

After discovering that the Debtor had spent the entire distribution, the Bankruptcy Court raised the issue of the Debtor's good faith with the parties and discussed whether it would be appropriate for the Chapter 13 trustee and the Creditors to file motions seeking dismissal based on the Debtor's unauthorized use of estate property. A033 at ¶¶ 40-42. Accordingly, on August 21, 2018, the Creditors filed a motion to dismiss the Debtor's Chapter 13 bankruptcy as a bad faith filing. A455-71. On September 18, 2018, the Debtor filed a motion to voluntarily dismiss his Chapter 13 bankruptcy as a matter of right. A678.

The Bankruptcy Court granted the Debtor's request for voluntary dismissal, but it also forewarned and forearmed both the Debtor and his counsel:

> [Y]ou are on notice now of the fact that should your client [the Debtor] choose to refile a case, you know, the Court expects the debtor to comply with all of the rules and the statutes of the Bankruptcy Code. And that I'm sure the Chapter 13 Trustee, the creditor, and I will be closely scrutinizing what is disclosed in the schedules and statement of financial affairs, and how the debtor proceeds. Because at this point, I am concerned about the debtor's good faith.

A475. (One must commend Judge Chan's use of understatement to emphasize the

obvious.)

No longer constrained by a bankruptcy case, Rashid obtained a writ of execution on the state court judgment to levy upon the Debtor's personal property located at the gem shop, so as to facilitate an eventual sheriff's sale. A582. On November 1, 2018, Rashid obtained and served a writ of execution naming the mother's estate as a garnishee in the state court action and filed and served garnishee interrogatories upon the estate's counsel inquiring about monies that had been paid or were owed to the Debtor. A530-32; A535-43. The estate's counsel responded that the estate was holding the sum of $121,190.85, which was otherwise payable to the debtor. A545-50. As correctly noted by the Bankruptcy Court, because Rashid properly served the estate's counsel with a writ of execution, Rashid obtained a lien on the second distribution, making Rashid's claim secured to the extent of the value of the second distribution. A678, n.8.

On November 27, 2018, the state court issued a writ of seizure in Kichkin's favor in order to allow the sheriff to seize the gems belonging to Kichkin from the gem store. A601-614. This was done in order to prevent the gems from being accidentally sold as part of Rashid's future sheriff's sale of the Debtor's personal property that had been levied upon. *Id.* On December 10, 2018, Rashid filed a praecipe to enter a garnishee judgment against the estate in the amount the mother's estate admitted it was holding in order to obtain the second distribution. A552-62.

### The Debtor Files for Bankruptcy Again

On the same day that Rashid filed the praecipe to enter judgment against the estate, and prior to the sheriff serving Kichkin's writ of seizure for the gems, the Debtor filed a petition for a new bankruptcy, this time under Chapter 11. *Id.*; A37; A287-81. And that night, the Debtor's counsel emailed the estate's counsel and the Creditor's counsel demanding immediate disbursement of the second distribution to the Debtor. A563-64. Counsel for the Creditors objected, and the estate retained possession of the second distribution pending the outcome of the bankruptcy proceedings. A566-68; A309.

At the outset of the Debtor's Chapter 11 bankruptcy, the Debtor filed a motion to extend the automatic stay, as well as his schedules and statement of financial affairs. A20-22; A679. Just like the Debtor's previous Chapter 13 filings, the Chapter 11 filings included multiple deficiencies such as the omittance of certain information like the monies received from the estate, among other things. A679-680.

On December 21, 2018, the Creditors filed an emergency motion for relief from the automatic stay in order to proceed with their state court execution remedies (Rashid on the writ of execution for the funds from the estate and Kichkin for recovery of the gems) and to resume the state court action so that the state court could assess Kichkin's damages on its breach of contract claim and reach judgment

on the remaining fraud, promissory estoppel, and unjust enrichment claims against the Debtor. A26-27; A680. The Bankruptcy Court held a hearing on that motion on January 9, 2019. A16.

## The January 9, 2019 Hearing

At the January 9, 2019 hearing, the Debtor confirmed that he refused to return Kichkin's gems unless Kichkin released the Debtor from the judgments and other pending state court claims. A280. Further, when asked about the distribution from the estate in his earlier Chapter 13 case, the Debtor testified that he had spent the entire distribution in approximately one month. A245. The Debtor also testified that he had planned to pay back the $100,000 estate distribution to his pre-petition creditors over the life of the Chapter 13 plan, but the Debtor admitted that he did not know how he would have done so. A251; A255-56; A284.

At that time, the Bankruptcy Court raised several concerns that it had about the Debtor's monthly operating reports from the Debtor's first bankruptcy case and the significant losses the Debtor sustained each month throughout the entire proceedings. A262-64. The Bankruptcy Court also questioned the disparity between the gross income reported on the statement of financial affairs in both of the Debtor's bankruptcies and the gross income listed in the Debtor's monthly operating reports during his Chapter 13 case. A318. The Debtor was unable to provide explanations to resolve any of these concerns. A682. Consequently, the

Bankruptcy Court continued the hearing to January 29, 2019, in order to give the Debtor an opportunity to review the underlying documents and address the Court's concerns. A320.

The January 29, 2019 Hearing

At the January 29, 2019 hearing the Debtor presented the Court with his 2017 tax return showing that his business had experienced an overall net loss that year of over $185,000 and a proposed amended set of monthly operating reports for March 2018 through April 2018. A641-52; A378. Ultimately, the Debtor stated that he was planning on using the second estate distribution to fund his Chapter 11 plan and that he would not replace the first distribution, which he had spent during his Chapter 13 case to pay his creditors in this proceeding. A368-69; A378-79; A421-22; A425. After the hearing, the Bankruptcy Court set a schedule for post-hearing briefing. A684. In the interim, the Debtor continued to file monthly operating reports showing sustained losses, and which were inconsistent with the Debtor's bank statements. *Id.*

The Bankruptcy Court Partially Grants the Creditors' Relief from the Stay

On March 23, 2019, the Bankruptcy Court issued an order denying the Debtor's request for an extension of the automatic stay due to the Debtor's bad faith conduct, an order partially granting the Creditors' Motion for Relief from the Automatic Stay, and an opinion setting forth the analysis the Bankruptcy Court

underwent in reaching its decision.

In determining whether cause existed to grant the requested relief from the automatic stay, the Bankruptcy Court found that almost all of the factors considered by courts when determining whether the Debtor had filed his case in bad faith were present in this case. Specifically, the Bankruptcy Court found that the Debtor listed only two unsecured creditors in his schedules, the Debtor filed a prior bankruptcy case, the Debtor's current bankruptcy filing allowed the Debtor to evade the writ of execution on Rashid's judgment and the writ of seizure in favor of Kichkin, there were few debts to non-moving creditors in the Debtor's case, the Debtor's current Chapter 11 case was filed on the same day that Rashid filed a praecipe to enter judgment against the estate in order to obtain distribution, the distribution is the Debtor's sole asset, there has been little pressure from nonmoving parties, the Debtor's Chapter 11 case essentially involved the resolution of the dispute between the Debtor and the Creditors, and the Debtor filed the Chapter 11 case solely to create an automatic stay. ECF No. 12-17 at p. 40.

## The Bankruptcy Court Denies the Debtor's Motion for Reconsideration

After the Bankruptcy Court issued the stay relief orders, Rashid filed a Motion for Further Relief from the Automatic Stay seeking the Bankruptcy Court's permission to execute on additional funds that the estate had received in the interim for the same reasons set forth in the stay relief orders and opinion (the Debtor's bad

underwent in reaching its decision.

In determining whether cause existed to grant the requested relief from the automatic stay, the Bankruptcy Court found that almost all of the factors considered by courts when determining whether the Debtor had filed his case in bad faith were present in this case. Specifically, the Bankruptcy Court found that the Debtor listed only two unsecured creditors in his schedules, the Debtor filed a prior bankruptcy case, the Debtor's current bankruptcy filing allowed the Debtor to evade the writ of execution on Rashid's judgment and the writ of seizure in favor of Kichkin, there were few debts to non-moving creditors in the Debtor's case, the Debtor's current Chapter 11 case was filed on the same day that Rashid filed a praecipe to enter judgment against the estate in order to obtain distribution, the distribution is the Debtor's sole asset, there has been little pressure from nonmoving parties, the Debtor's Chapter 11 case essentially involved the resolution of the dispute between the Debtor and the Creditors, and the Debtor filed the Chapter 11 case solely to create an automatic stay. ECF No. 12-17 at p. 40.

## The Bankruptcy Court Denies the Debtor's Motion for Reconsideration

After the Bankruptcy Court issued the stay relief orders, Rashid filed a Motion for Further Relief from the Automatic Stay seeking the Bankruptcy Court's permission to execute on additional funds that the estate had received in the interim for the same reasons set forth in the stay relief orders and opinion (the Debtor's bad

faith). A714. Then, on April 3, 2019, the Debtor moved for reconsideration of the stay relief orders. A697.

On April 17, 2019, the Bankruptcy Court denied the Debtor's motion for reconsideration on the bases that the motion failed to identify any clear error of law or fact with respect to the stay relief orders, did not present new evidence previously not available that would change the outcome of the Bankruptcy Court's prior decision, largely repeated the same arguments that had already been dismissed previously, and otherwise did not meet the burden required for a motion for reconsideration. A716-19.

On April 18, 2019, the Bankruptcy Court granted Rashid's motion for further relief from the automatic stay for the same reasons set forth in the stay relief orders and opinion. A720-21.

## III. Discussion

In this appeal, the Debtor essentially argues that the Bankruptcy Court erred in granting partial relief to the automatic stay. An independent review of the record confirms all of the Bankruptcy Court's findings of fact and law. The Bankruptcy Court's well-reasoned analysis adequately supports the stay relief orders, the reconsideration order, and the further relief order. The Bankruptcy Court accurately found that, among other things, the Debtor failed to fully disclose his assets and liabilities in the two bankruptcy proceedings, disregarded the Chapter 13

trustee's warning not to spend funds which constituted property of the bankruptcy estate, filed multiple pleadings containing numerous inconsistencies, and clearly lacked the ability to confirm a bankruptcy organization plan. After making these findings, the Bankruptcy Court properly held that the Debtor acted in bad faith, denied the Debtor's request to extend the automatic stay, and partially granted pre-petition judgment creditors, the Creditors, relief from the automatic stay.

The victims of course are the Creditors here, whom the Bankruptcy Court has tried to give some relief to by granting partial relief from the automatic stay so that they could execute on their already established state court judgments. In addition, and with astonishing hubris, the Debtor to this day is holding on to several gems of one of the Creditors despite the Creditor's legally established right to have them returned refusing to relinquish them unless Kichkin agrees to release him from the judgments and other pending state court claims. A280.

The "bankrupt" Debtor in the meantime filed innumerable inconsistent documents with the trustee and conveniently failed to mention at a Section 341 creditors' meeting that he was to receive a $100,000 distribution from his mother's estate one day before he received that very distribution. Further, ignoring the explicit, written direction of the trustee, the Debtor then went on to spend all of this money without input from the trustee. It was not until the Debtor withdrew his first bankruptcy filing and Rashid served a writ of execution on the estate as a garnishee

16

and garnishee interrogatories upon the estate's counsel that the Creditors learned that the Debtor was set to collect a second disbursement, this time in the amount of $121,190.85. Despite the Debtor's efforts to have those funds disbursed to himself rather than to the Creditors, just as Rashid filed a praecipe to enter judgment against the estate, the Debtor filed a second bankruptcy action in a last ditch effort to keep the money from the Creditors.

One can imagine the frustration of these two Creditors with rightful claims and judgments as they enter the courthouse turned bleak house by the Debtor who files not one bankruptcy action which he voluntarily withdrew just as the justice system was finally shutting the charade down followed by another to continue the charade of machinations and manipulations.

Based upon an independent review of the factual record, the Court finds no error in the Bankruptcy Court's findings of fact. *See Woodard v. City of Philadelphia*, 558 B.R. 711, 716–17 (E.D. Pa. 2016) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)). Furthermore, upon a plenary review of the Bankruptcy Court's application of law to the established factual record, the Court sees no error either. Indeed, the Bankruptcy Court correctly applied the bad faith factors to the established factual record. Accordingly, the bankruptcy court's legal conclusions follow from its factual findings, which are more than sufficient to support a determination that the Debtor filed his bankruptcy case in bad faith, *see In*

*re Dewey Commercial Inv'rs, L.P.*, 503 B.R. 643, 650 (Bankr. E.D. Pa. 2013) (laying out the applicable factors), and that the granting of the partial relief from the automatic stay to the Creditors was justified.

## IV. Conclusion

For the foregoing reasons, the Bankruptcy Court's grant of partial relief to the Creditors from the automatic stay will be affirmed.

BY THE COURT:

_____
CHAD F. KENNEY, J.      10-23-19